**STOCKYARDS NAT. BANK v. WILKINSON.**
(No. 6551.)

(Court of Civil Appeals of Texas. San Antonio. April 30, 1921. Rehearing Denied May 26, 1921.)

1. Chattel mortgages ☞235 — Advice card from one bank to another as to crediting proceeds of sale construed.

Where mortgagor shipped mortgaged cattle to commission firm, and where the commission firm placed net proceeds in bank with instructions to credit the amount "By direction of:

H. [mortgagee], a/c J. [mortgagor]. Deposited by S. [commission firm]. To the ·following bank: S. [owner of mortgage notes]"—and where advice card from bank in which the proceeds were so deposited to bank owning notes stated: "We credit your account $4,316.60 [amount of proceeds]. By direction of: H. [mortgagee], a/c J. [mortgagor]"—the bank owning note was required to credit proceeds to mortgagor's account toward payment of mortgage note, and not to mortgagee's account, to be drawn out and used by it as it saw proper.

2. Evidence ☞456 — Witness not allowed to make oracular explanation of meaning of advice card having no meaning peculiar to banking business.

Where a banker testified that an advice card sent by him to another bank "among bankers means what it says on its face," and that it had no meaning peculiar to the banking business, and where he was permitted to state what the meaning thereof was, refusal to allow him to make an oracular explanation of its meaning held proper.

3. Appeal and error ☞742(7)—Court will not examine grounds of motion for new trial to discover assignment of error.

The Court of Civil Appeals will not examine the 62 grounds for a new trial to discover an assignment of error where statement under assignment failed to show what paragraph in the motion is used in the assignment.

4. Trial ☞405(3)—General exception to findings of fact and conclusions of law insufficient.

Document stating that plaintiff "enters of record its exceptions to the findings of fact and conclusions of law made and filed by the court" held too general and indefinite to require consideration.

Error from District Court, Tarrant County; Bruce Young, Judge.

Suit by the Stockyards National Bank against J. B. Wilkinson. Judgment for plaintiff giving him insufficient relief, and he brings error. Affirmed.

Wm. J. Berne, of Fort Worth, for plaintiff in error.
W. W. Wilkinson, of Fort Worth, for defendant in error.

FLY, C. J. Plaintiff in error sued defendant in error, who will be designated herein as plaintiff and defendant, on a promissory note for $12,191.15, and to forclose a chattel mortgage on certain cattle. Defendant claimed a credit on the note of $4,316.60, of date September 28, 1918, in addition to an admitted credit made on August 14, 1918. The cause was submitted to a jury on special issues, and upon the answers thereto judgment was rendered in favor of plaintiff for the amount claimed, less the credit claimed by defendant.

The facts show that the note sued on was

executed by defendant to the Herbert Graves Commission Company, and a mortgage executed on certain cattle to secure the same. Afterwards, before maturity, the note was purchased by plaintiff. The note was not paid at maturity, but a new note for $12,527.90 was executed by defendant to the commission company and was indorsed and delivered by it to plaintiff. In September, 1918, defendant shipped a portion of the mortgaged cattle to Swift & Henry, a commission firm in Kansas City, Mo., to be sold by them and proceeds remitted. Swift & Henry sold the cattle and placed the net proceeds in the Interstate National Bank of Kansas City. The money was obtained from a sale of the mortgaged cattle, which mortgage was held by plaintiff as security for the note indorsed to it. Swift & Henry deposited the $4,316.60 derived from the sale of the cattle in the Interstate National Bank with the following written instructions:

"Credit $4,316.60, By direction of: Herbert Graves Commission Company, a/c J. B. Wilkinson. Deposited by Swift & Henry. To the following Bank: Stockyards National Bank, Fort Worth, Texas. For which we hand you check."

It must be kept in mind that at this time the note of defendant, which had been indorsed by the Herbert Graves Commission Company, and on which it was liable, was owned by plaintiff, and the plain meaning of Swift & Henry's instruction to the Interstate National Bank was that the money was by the direction of the indorser of the note to be placed to the account of J. B. Wilkinson with the plaintiff bank. The Kansas City bank credited the money to the Fort Worth bank, but it is insisted that it was so deposited for the use of the Herbert Graves Commission Company, account of J. B. Wilkinson.

The Kansas City bank sent a card to plaintiff in regard to the deposit as follows:

"We credit your account $4,316.60. By direction of: Herbert Graves Commission Company, a/c J. B. Wilkinson."

On receiving that card the money was credited to the Herbert Graves Commission Company and paid over it. This was the proceeds of cattle sold by Wilkinson on which the plaintiff held a mortgage. The Kansas City Bank officers testified that the money was placed to the credit of plaintiff and was subject to its draft. As said by Chrisman, the cashier of the Interstate National Bank:

"According to my understanding of the meaning of the deposit slip, as understood among bankers, the instructions are for us to place the money to the credit of the Stockyards National Bank of Fort Worth, for the use of Herbert Graves Commission Company for the account with them of J. B. Wilkinson."

230 S.W.—66

[1] At that time plaintiff held a note against defendant on which the commission company was an indorser, and the only reasonable construction of the words of the card was that the money should be placed by plaintiff on account of defendant for the note on which the defendant and indorser were bound. That was the only way in which it could be used for the benefit of the indorser and on the account of defendant. The witnesses swore that no occult or mystic meaning should be given to the words of the card; that "the meaning of said advice card among bankers is that it advised the Stock Yards National Bank of Fort Worth that we had credited their account with $4,-316.60, as deposited by Swift & Henry, by direction of Herbert Graves Commission Company, account of J. B. Wilkinson." That could not mean that the money was deposited for the use and benefit of the Herbert Graves Commission Company alone to be drawn out and used by that company as it saw proper. That is not the construction put upon the meaning of the card sent plaintiff by disinterested bankers.

Wallenberg, the assistant cashier of the Continental Bank & Trust Company of Fort Worth, showed himself to be an expert banker, and upon being shown the advice card sent by the Interstate National Bank to plaintiff said:

"If I were handed this advice of credit to make proper entries I should charge, in this case, the Interstate National Bank of Kansas City with $4,316.60, and pass it to the credit of J. B. Wilkinson, in our bank, if he had an account there; that is, we would credit it in our bank. I believe, without exception, that the above is the interpretation that a bank man would give that advice card."

To the same effect was the testimony of Willis, another expert banker.

The jury, in response to the issues, answered that the instructions given by Swift & Henry were to credit defendant with the proceeds of the cattle in Stockyards Bank of Fort Worth, Tex.; that J. C. Wilkinson, acting for defendant, had given the same instructions to Swift & Henry; that plaintiff did not follow its instructions from the Kansas City bank in giving the Herbert Graves Commission Company credit for the money; and that the money should have been credited to defendant. There is ample testimony to support these findings of fact. Plaintiff in error seems to ignore the fact that the jury could reject the evidence of its witnesses and credit the evidence offered by defendant. The first, second, third, and fourth assignments of error are overruled.

[2] The fifth assignment of error is not followed by an intelligible statement. It does not disclose who Jay W. Smith may be, nor what relation he bore to the card of

advice. It appears, however, from argument under the third proposition that Smith was an official in the Kansas City bank who sent out the card of advice, the plaintiff wanted him to swear to what he meant in what seems to have been a cryptic document to plaintiff, although plain to disinterested parties. Smith was allowed to, and did, swear that the card "among bankers means what it says on its face. Among bankers the above form of communication has no meaning peculiar to the banking business. Said communication means exactly what it states, no more or less." It was proper to reject any occult meaning that he wished to convey by a plain communication. He was permitted to state what the advice card and the deposit slip meant. He said it was "self-explanatory," and, if so, it did not require any oracular explanation by him of its meaning. The fifth assignment is overruled.

[3, 4] The sixth assignment of error complains that "there is no evidence to support the finding that the Interstate National Bank was plaintiff's agent in accepting said $4,316.60." Who made the finding·is not disclosed in the assignment nor in the statement under it. The statement fails to show what paragraph of the motion for new trial is used as the sixth asignment, and it is not the duty of this court to go through the 62 grounds for a new trial to discover plaintiff's assignment of error. No objections were made to the findings of fact of the court which are supported by the facts. There was a document filed stating that plaintiff "enters of record its exceptions to the findings of fact and conclusions of law made and filed by the court," which is too general and indefinite to require consideration.

J. E. Wilkinson, a brother of defendant, saw Swift & Henry after the cattle had been sold and, as agent of defendant, instructed them to send the proceeds to the plaintiff to be placed to the account of defendant, and Swift & Henry so instructed the Kansas City bank, and it gave instructions along the same lines to plaintiff. The advice card was plain, and everybody seemed to understand its plain language except plaintiff. It seemed to live in a blissful state of ignorance as to what was transpiring in the financial affairs of its debtors. It did not know that the Graves Commission Company was on the brink of bankruptcy; it did not know that property on which it held a mortgage was being sold by the mortgagor; it did not know that the money sent it by its Kansas City agent was the property of its debtor, and, even when directed to give him credit for it, turned it over to a bankrupt who also was its debtor, and allowed the latter to convert it to its own use.

The judgment is affirmed.

---

⬥⟾For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes